AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

## UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**A MOTOROLA CELL PHONE WITH IMEI NUMBER 351647114983086, WHICH IS CURRENTLY LOCATED AT 4 HARROWGATE COMMONS, MASSENA, NEW YORK 13662.** | Case No.   5:21-MJ-331 (GLF) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A

located in the   Northern   District of   New York  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with intent to distribute a controlled substance |

The application is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

☒ Delayed notice of  30  days (give exact ending date if more than 30 days):
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

06/24/2021
12:35 PM

*Applicant's signature*

Emily Davis, Special Agent, HSI

*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: JUNE 25, 2021

*Judge's signature*

City and State: Plattsburgh, NY        Hon. Gary L. Favro, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A MOTOROLA CELL PHONE WITH IMEI NUMBER 351647114983086, WHICH IS CURRENTLY LOCATED AT 4 HARROWGATE COMMONS, MASSENA, NEW YORK 13662. | Case No.   5:21-MJ-331 (GLF) |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Emily Davis, being first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a Motorola cell phone, IMEI number 351647114983086 (hereinafter "the Device"), which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  Your affiant, Special Agent Emily Davis, states that I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been a Special Agent since June of 2018. I am currently assigned to the HSI Border Enforcement Security Taskforce (BEST) in Massena, New York. BEST is tasked with the enhancement of border security by fostering coordinated efforts among Federal, State, and local border and law enforcement officials to protect United States' border cities and communities from trans-national crime, including but not limited to drug trafficking, arms smuggling, bulk cash smuggling, illegal alien trafficking and smuggling,

violence, and kidnapping along and across the international borders of the United States. I am also currently assigned to the St. Lawrence County Drug Task Force (SLCDTF) in Canton, New York.

3. The SLCDTF is tasked with fostering coordinated efforts amongst law enforcement in St. Lawrence County, New York to combat drug trafficking and other related drug crimes that have a nexus to the County. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training located at the Federal Law Enforcement Training Center in Glynco, Georgia. As a Special Agent with HSI, I have received training in investigating violations of federal statutes, including but not limited to: narcotics smuggling and distribution, money laundering, and bulk cash smuggling. Prior to being employed as a Special Agent, I was a Customs and Border Protection Officer (CBPO) with United States Customs and Border Protection (CBP) since July of 2014. In May of 2014, I obtained a baccalaureate degree in Criminal Justice from Temple University located in Philadelphia, Pennsylvania.

4. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority. I am a "Federal law enforcement officer", within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am charged with conducting criminal investigations of alleged violations of federal criminal statutes, including but not limited to Title 18, Title 21, and Title 31 of the United States Code.

5. From my training and experience as a Special Agent and that of agents and officers with whom I regularly work, I know that drug smuggling organizations frequently utilize various forms of communication on electronic devices that may facilitate the illegal manufacture, distribution, and dispense of controlled substances to, from, and within the United States. I also have become familiar with the manner in which illegal drugs are imported and distributed, the

method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement. Other law enforcement officers and agents of HSI BEST Massena and the SLCDTF also have extensive experience in narcotics investigations and I continue to have conversations with them concerning this and other narcotics related investigations.

6. I am submitting this Affidavit in support of my application for a search warrant authorizing the search of the Device. I submit that probable cause exists to believe that the Device contains electronically stored data, which will show evidence of storing drugs, purchasing drugs, selling drugs, drug proceeds, drug packaging materials, and other instrumentalities of drug trafficking in violation of Title 21, United States Code, Sections 846 and 841(a)(1), the possession with intent to distribute a controlled substance, distribution of a controlled substance, and conspiracy to commit the same.

7. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing a search warrant for the Device. The facts in this Affidavit come from my personal knowledge, my training and experience, my participation in the investigation, and information obtained from other agents, investigators, and witnesses. As a result of my participation in this investigation, I am fully familiar with the facts and circumstances of this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.  The property to be searched is the Device. The Device is currently located at 4 Harrowgate Commons, Massena, New York 13662.

9.  The applied-for warrant would authorize forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## FACTS ESTABLISHING PROBABLE CAUSE

10. On March 24, 2021, at approximately 7:00 a.m., New York State Police (NYSP) Troopers from NYSP Syracuse initiated a traffic stop on a red 2020 Jeep Cherokee bearing New York registration JRT9305. At the time of the encounter, the vehicle was traveling northbound on Interstate 81, in town of Cicero, Onondaga County, New York, in the Northern District of New York. NYSP Troopers observed the vehicle operator as it traveled northbound and believed it to be a known individual, whom the Troopers were previously aware of and knew to have a suspended license. The NYSP Troopers also observed the vehicle was traveling at an excessive speed, in violation of NYS Vehicle Traffic Law.

11. Officers approached and identified the driver of the vehicle. There was one passenger in the vehicle, Charlotte POTTER. NYSP determined that the driver's New York State driver's license was suspended. NYSP further determined that POTTER also did not have a valid license.

12. NYSP then conducted an inventory search of the vehicle, consistent with agency policies and procedures, prior to the vehicle being towed. Officers discovered a large clear plastic zip-lock bag containing a clear, glass like crystal substance, located in the rear seat area on the floor. Based on officers training and experience, the substance appeared to be crystal

methamphetamine. NYSP conducted a field test of the clear crystal-like substance, which tested presumptive positive for the properties of methamphetamine.

13. In addition, the vehicle search resulted in the discovery of approximately $2600 in US currency. The suspected crystal methamphetamine, currency, driver, and POTTER were all transported back to the Syracuse NYSP police barracks for further investigation.

14. Officers found the clear crystal-like substance to weight approximately 980 grams, inclusive of all packaging materials. Officers advised POTTER of her Miranda rights, and she voluntarily agreed to speak with officers. The interview was audio recorded.

15. POTTER told officers the crystal methamphetamine found in the vehicle belonged to the driver, but that she was supposed to received approximately ten ounces (283.4 grams) of that crystal methamphetamine, which she would then resell. She stated that the driver was going to front her the crystal methamphetamine, and that she would repay the driver $2,000 per day for a total of $8,000 after she re-sold it. POTTER stated that she has been reselling crystal methamphetamine for the driver since the end of January or the beginning of February of 2021. POTTER estimated that since that timeframe, she has received and re-sold at least 50 ounces (1417.4 grams) of crystal methamphetamine. POTTER stated that she usually would pay the driver $850 per ounce of crystal methamphetamine, but that on this trip she would pay $650 per ounce since she went along on the trip. She stated that she re-sells the crystal methamphetamine for $150 per gram.

16. POTTER told officers that on this trip, she and the driver initially planned on meeting with the driver's source in North Carolina, but there was a disagreement between the two and they decided to switch and go to a different supplier that POTTER has in South Carolina. POTTER stated that she communicates with the South Carolina supplier via Facebook on her cell

phone. POTTER then stated that the South Carolina supplier was unable to provide them with the requested weight of crystal methamphetamine, so they decided to go back to the North Carolina supplier, which is where the crystal methamphetamine found in the vehicle came from.

17.     On June 09, 2021, a Grand Jury for the Northern District of New York returned a true bill indictment for POTTER, charging her with violating Title 21, United States Code, Sections 841(a)(1) and 846, conspiracy to distribute and possess with intent to distribute methamphetamine. On that same day, the Honorable Gary L. Favro, U.S. Magistrate Judge, signed an arrest warrant, which commanded any authorized law enforcement officer to arrest POTTER based on the Grand Jury indictment.

18.     On June 14, 2021, Homeland Security Investigations (HSI) Massena encountered and executed the arrest warrant on POTTER in Watertown, New York. POTTER was arrested by HSI and transported to the Clinton County Jail in Plattsburgh, New York. At the time of the encounter, POTTER was in possession of the Device, which she turned over to HSI along with her other personal property prior to being transported to jail. HSI seized the Device in accordance with agency policies and procedures.

19.     Through your affiant's training and experience, I am aware that drug smugglers, such as POTTER, commonly store names, phone numbers, and contact information for members of drug smuggling organization on cellular phones, GPS devices, hard drives, laptops, USB drives, tablets, and other electronic devices, including, but not limited to information pertaining to the heads of the drug trafficking organization, the individuals involved in the drug smuggling organization, the individuals who transport the drugs, and the individuals who are responsible for the proceeds of drug trafficking. I am also aware that drug smugglers commonly

communicate on their cellular devices in furtherance of their own travels, including, but not limited to thorough real-time conversations regarding drug smuggling.

20. The Device is currently in storage at 4 Harrowgate Commons, Massena, New York 13662. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, are substantially in the same state as they were when the Device first came into the possession of HSI.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

22.     Based on my training, experience, and research, I know that iPhone cellular phones, other cellular phones, and GPS devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

24.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.

There is probable cause to believe that this forensic evidence might be the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

26.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of the warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

## CONCLUSION

27.     Based upon this information, this affiant respectfully submits that this affidavit supports probable cause to believe that evidence of violations of Title 21, United States Code, Section 841(b)(1)(A) and 846 (possession with intent to distribute a controlled substance, distribution of a controlled substance, and conspiracy to commit the same), will be located in the Device. This affiant respectfully requests a search warrant authorizing the examination of the Device as described in Attachment A to seek the items described in Attachment B.

Respectfully submitted and attested to by the affiant,

06/24/2021
12:35 PM

Emily Davis
Special Agent
Department of Homeland Security

I, the Honorable Gary Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on (date and time) June 25, 2021 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.   10:15 AM

Hon. Gary Favro
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is:

- A Motorola Cell Phone; IMEI number 351647114983086

This warrant authorizes the forensic examination of the Device for the purpose of identifying electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1) (possession with intent to distribute and distribution of a controlled substance), and 21 U.S.C. § 843 (use of a communication device to facilitate a drug transaction), and involve Charlotte POTTER, and others, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;

   b. Store telephone and address directories;

   c. Direct connect and identification numbers;

   d. Pictures and videos;

   e. All audio recordings;

   f. All voice mail recordings;

   g. All location and GPS data;

   h. All instant messaging and related stored communications;

   i. All SMS messages and related stored communications; and

   j. Any other notations or electronic storage of any kind.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.